***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Casualty Reciprocal Exchange is the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $481.39, which yields a compensation rate of $320.94 per week, based upon the parties' stipulation.
5. The parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
6. Plaintiff's last day of work for the defendant-employer was 10 August 2001.
7. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit 1 — Medical Records, 148 pages,
b. Stipulated Exhibit 2 — Plaintiff's Discovery Responses,
c. Stipulated Exhibit 3 — Defendants' Discovery Responses,
d. Stipulated Exhibit 4 — Additional Medical Records, and
e. Stipulated Exhibit 5 — Plaintiff's Exhibits 1-10.
8. The issues for determination by the Commission are whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on or about 17 July 2001, and if so, to what benefits may he be entitled under the Act.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-eight year old right-hand dominant male native of Mexico. He has been in the United States since 1973 and is able to speak and read English. However, he cannot write in English. Plaintiff attended five years of school in Mexico.
2. Plaintiff initially worked in Texas, where he gained experience as a dairy farm worker, construction worker, as a laborer on a watermelon farm, and laborer planting pine trees for wood. He obtained his green card in 1985. In 1988, plaintiff moved to North Carolina.
3. In July of 1989, plaintiff began working for Earl Deal, Jr., co-owner of Cranberry Tree Farms. He worked approximately two months and then returned to his wife and children in Mexico. In 1990, plaintiff returned to work for Mr. Deal, and he worked for approximately ten months as a laborer on the Christmas tree farm.
4. Plaintiff worked ten hours per day, five to six days per week. His duties included spraying trees, marking trees to cut or pull, driving a tractor or truck, harvesting and loading trees. By 1995, plaintiff was promoted to foreman. In addition to the hands-on work, he determined where the crew would work and gave them instructions as to the manner to do the job.
5. At the hearing before the Deputy Commissioner, plaintiff testified that on 17 July 2001, he was wearing a four to five-gallon tank in a backpack to spray trees. He contends that as he was walking through the trees, he fell into a 36" hole, where a tree had been. He further testified he landed on his right shoulder and arm. After getting back up, he stated that he resumed spraying and fell in a second tree hole. There were no witnesses to either fall.
6. Plaintiff contends he told his co-workers that day and that the following day, he reported his falls to Earl "Buddy" Deal, III, the owner's son. He also testified that he told Earl Deal, Jr., about three days later.
7. Earl Deal, Jr. testified he first received notice plaintiff was contending he had sustained an on-the-job injury in March of 2002, when he received plaintiff's I.C. Form 18.
8. Buddy Deal spoke both English and Spanish with plaintiff throughout the course of plaintiff's employment.
9. Plaintiff has complained of right arm numbness to Buddy Deal beginning in approximately April of 2001. However, he never attributed his symptoms to an on the job injury.
10. Plaintiff had a prior workers' compensation injury in 1996, while working for defendants and was familiar with the reporting requirements for workers' compensation injuries.
11. During his testimony, plaintiff insisted he had seen Dr. Vickie Ingledue of Mt. Jefferson Family Practice prior to 1 August 2001 for the injuries in the alleged fall. However, Dr. Ingledue's notes reflect plaintiff was seen on 1 August, at which time he report a five-day history of right shoulder and neck pain, but denied any trauma. Plaintiff had regularly treated with Dr. Ingledue since at least 2000 for his diabetes, which was difficult to control. Although plaintiff was capable of telling Dr. Ingledue about his job duties, he contends there was a communication problem, and he did not understand what trauma was.
12. On 14 August 2001, plaintiff presented to Dr. Traynham for neck and shoulder pain over the past few months. Plaintiff did not report the pain being due to any specific injury. A cervical MRI revealed a C4-5 right disc extrusion.
13. Debra Trulock, R.N., of the Farm Worker Health Program saw plaintiff on 22 August 2001. He did not report falling in a hole at work to Ms. Trulock.
14. Neurologist Dr. John Wilson examined plaintiff on 18 September 2001. Plaintiff did not report any accident of injury as preceding the onset of symptoms. On 21 September, Dr. Wilson performed an anterior cervical diskectomy at C4-5.
15. Following therapy, Dr. Wilson released plaintiff to return to work without restrictions on 13 December 2001.
16. On 23 January 2002, plaintiff was seen at Watauga Medical Center's pain clinic, where he began treating with Dr. Cate Trate. Plaintiff told Dr. Trate he fell forward in a hole where a tree had been dug and landed on his right shoulder.
17. Dr. Trate felt the herniated disc seen on plaintiff's MRI could have been caused by a fall like plaintiff described. However, he was unable to determine the cause of plaintiff's herniated disc because plaintiff had no prior MRI and Dr. Trate did not see plaintiff until eight months following when plaintiff reported the injury took place.
18. Plaintiff has not sought work since 13 December 2001, when he was released by Dr. Wilson.
19. The Full Commission finds based upon the competent medical evidence of record, plaintiff did not sustain an injury by accident on 17 July 2001. Rather, it appears his neck and arm symptoms were as a result of a gradual onset of pain, which was not the result of a specific traumatic incident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Plaintiff did not sustain a compensable injury to his neck and arm arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act for his neck and arm symptoms. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall bear its own costs.
 ***********
This the ___ day of April 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CS/kjd